Caer, J.
Besides the points made by the attorney general, to sustain the judgement of the circuit court, another occurred to us in conference; namely, whether this suit can be maintained at the relation of Anderson the administrator de bonis non, without his having first made himself a party to the record of the proceedings of the first administrator by scire facias ? I shall first dispose of the attorney general’s objections to the action.
His first objection was, that the statute does not give the action at the relation of the administrator de bonis non. In the construction of statutes, it is the meaning of the legislature we must seek for: this constitutes the essence of the law: its words are our main guide, but we must not shut our eyes to every thing else, and stick exclusively to the letter. The context, and the subject matter must be looked to; the mischief and the remedy. This court by a series of decisions, had settled it as the law, that, before an action could be brought on the bond of an executor or administrator to charge his sureties, there must have been, 1. a suit against the representative to establish the demand, and 2. a suit to fix the devastavit. The legislature, thinking this intermediate suit unnecessary, passed a statute in 1814, dispensing with it: this statute, in the revision of 1819, forms *400 the 63rd section of the statute of wills, 1 Rev. Code, ch. 104. p. 390. It is seen, at a glance, that the sole object of that statute was to take away the necessity of the second action. The legislature never dreamed of changing, or even 0j- explaining the existing law, as to the person who might sue on the bond; whether, in a case like this before us, the representative of the administrator who recovered the judgement, or the representative of the intestate: it merely intended to declare, that the person entitled to the action, might, immediately on the return of nulla bona, sue on the bond. This court has determined after much deliberation, that the person thus entitled, in a case like the present, is the administrator de bonis non. The reasons of that decision, and the mischiefs of a contrary one, may be seen at large in Dykes v. Woodhouse and Wernick v. M’Murdo, and will not be repeated here.
The attorney generals second objection is founded on the following words of the statute—“Where any person shall have heretofore recovered, or shall hereafter recover, any judgement 8ic. and upon execution issued ¡kc. it shall be returned, that there are not found” &ic. He insisted, that these words are wholly prospective, and that, whenever the judgement was obtained, an execution must issue after the passing of the statute, in order to authorize the action it gives. I cannot see the force of this objection. The object of the statute was to give the action on the bond of the executor or administrator, immediately on the return of nulla bona. It clearly takes in judgements obtained before the enactment: why not the issuing and return of the execution also, which are mere ministerial acts? When its object was to prevent delay and expense, can it be supposed, that it would put the parties to the useless delay and expense of issuing another execution, when one had already been returned nulla bond ? Besides, to make such issue of a second execution, a pre-requisite to the action on the bond, would, in all cases where the plaintiff in the first execution had died since, be a denial of the action, without an inter *401 mediate proceeding by scire facias: whereas the law says, • 1* 7*7 ivj tl. the suit may be brought immediately on the bond. In the case before us, for instance, the first administrator who obtained the judgement and issued the execution, died; no second execution could issue in his name. Nor do I think the words shall issue, must of necessity be taken to mean shall issue after the passing of the statute, but shall issue after obtaining the judgement. I cannot think there is any weight in this objection.
The objection, which I have mentioned as having occurred in conference, was founded on the general rule, that where a new person, who was not a party to the judgement, derives a benefit by, or becomes chargeable to the execution upon it, there must be a scire facias to make him a party to the judgement. 2 Wms. Saund. 6. note 1. 72. e. note 3. At common law, no scire facias could issue on a judgement, except in real actions: in all personal actions, where the lapse of time, or the change of parties, had been such as to prevent the taking out execution, the party entitled to the judgement, was obliged to bring an action of debt on it; 2 Inst. 269. To remedy this inconvenience, the statute of Westm. 2. 1 Ed. 1. ch. 45. gave a scire facias in personal actions: but “ this statute (as my lord Coke says, 2 Inst. 472.) is in the affirmative, and therefore it restraineth not the common law, but the party may waive the benefit of the scire facias given by this act, and take his original action of debt by common law.” In Proctor v. Johnson, 1 Ld. Raym. 669. 670. 2 Salk. 600. S. C. which was a scire facias on a judgement in ejectment j and demurrer, upon the ground, that a scire facias lay not on a judgement in ejectment, for, at common law, it lay only in real actions, and the statute gives it only in personal; and 2 Inst. 469. was cited and relied on : lord Holt said, “ that Coke’s meaning was, that a scire facias would not lie, at common law, for debt or damages, but here it sounded in the realty:” he said further, “ it is absolutely necessary, that a scire facias should lie in this case, because there is no other means, to execute *402 the judgement, if the parties die or are changed; but, in judgements for debt or damages, the judgement might have been executed at common law, by action of debt on the judgement.” It is clear, then, that the action of debt on tjje judgement existing at common law, was not taken away by the statute; and, I presume, that, in the case before us, even without the aid of our statute, the administrator de bonis non could resort to it. In truth, it differs but little in its nature from the scire facias, as the declaration gives a history of the case, and shews how the plaintiff is connected with it.
I think the judgement must be reversed.
Cabell, J. concurred.
Brooke, J.
I see no difficulty in the construction of the statute of 1814, now the 63rd section of the statute of wills, 1 Rev. Code, p. 390. The legislature cannot enumerate all the cases, to which the principle intended to be established will apply; it is enough, if it gives an example of its application : the court must follow it out, by applying it to cases of a like nature. The object of this statute was to dispense with a second suit against an executor or administrator, in order to establish a waste of the assets, before a suit could be maintained on the administration'bond against the sureties, to charge them. In words, it only provides for the case in which a person or persons recover a judgement, in his or their own right; but the remedy it prescribes is equally applicable to a case, in which the judgement is obtained by an executor or administrator, in right of his testator or intestate. The same mischief is to be prevented : the second suit to establish the waste of the defendant executor or administrator, before any suit could be brought to charge his sureties, was as much intended to be dispensed with, in such case, as in the case in which the first judgement was obtained by any person in his own right. In the last case, the party obtaining the judgement, is authorized, *403 upon such return of the execution as is prescribed by the . 7 • 7 . . . statute, immediately to commence a suit against trie executor or administrator and his sureties, or either of them, to establish the waste of tho assets; and, if the party entitled to the fruits of the judgement, in such case, is entitled to bring the suit, then, unless we disregard the decisions in Dykes v. Woodhouse, and several others in this court, the administrator de bonis non of the intestate for whose estate the judgement was recovered (in the case before us) is the proper party relator, to bring this action.
I think the attorney general’s criticism too nice,—that though the statute is retrospective as to tho judgement, it is prospective as to the execution issued upon it. The language, on examination, seems clearly to comprehend any execution issued on such judgements as were previously mentioned in the section.
As to the doubt which has been suggested, whether tho administrator de bonis non must not make himself a party to the judgement, by an action of debt on it, or by scire facias, before he can sue on the administration bond ; cui bono should he bring debt, or sue a scire facias on tho judgement? He could have no new execution on the judgement he would obtain in either case, after the return of nulla bona on the execution, or the return equivalent to it, in the case before us. At common law, he might have the scire fieri inquiry, directing the sheriff to inquire by a jury, whether waste of the assets had been committed by the executor or administrator ; and, on the return that waste had been committed, ho would have an execution de bonis propriis, to the extent of the waste found by the inquest: but the action of debt suggesting the waste, was found to be a more efficient mode of ascertaining the devastavit, aud has in fact, superseded the scire fieri inquiry, and rendered it obsolete. That action is now dispensed with by our statute : and to compel the administrator de bonis non, or any other representative, to resort to the scire fieri inquiry, would produce all the delay intended to he avoided by the statute; *404 and still greater delay, if he must first make himself a party to the judgement by an action of debt, or a scire facias, before he could have the scire fieri inquiry, or the action of debt suggesting the devastavit, and thereby convict the executor or administrator of waste, before he can commence his action on the administration bond, to charge the sureties. In England,'where the assets of the deceased person were administered under the eyes of the ordinary, no bond with surety was required of executors or administrators; and the scire fieri inquiry, on the return of the execution nulla bond, or the action of debt suggesting the waste, gave all the relief that could be required. But here, it was thought necessary to lay the foundation of the suit on the bond to charge the sureties, by bringing the action of debt suggesting the devastavit, before resort was had to the suit on the bond. That is now dispensed with by the statute in question; and a suit on the bond, is given against the executor or administrator, and his sureties, or either of them; in which as broad a defence may be made against the charge of waste committed by the executor or administrator, as before, on the action of debt suggesting the waste.
Tuckek, P.
In deciding this case, I shall take the case of Dykes v. Woodhouse to be unquestionable. Certainly, it ought not to be questioned except by a full court; and I should regret to see it disturbed, because it is better that the question of practice should be considered as settled, particularly, as the decision is in perfect conformity with the rights of parties and the convenience of suitors. By that decision it is declared, that an administrator de bonis non with the will annexed, may maintain an action of debt on a judgement obtained by the executor of his testator; which accords with the doctrine of Brudenel's case, 5 Co. 9. that the executor of an administrator who recovers a judgement, is not entitled to have execution of that judgement: and the converse of the proposition is equally true, as to the administrator of an executor. Now, in this case, *405 the original judgement having been obtained by Moncrief Hill administrator of Robert Hill, Ms executor or administrator could not enforce the judgement. This, I think, is conceded by all the authorities. For, anteriour to the statute of 17 Car. 2. ch. 9. § 2. though it was decided, that the administrator de bonis non could not enforce the judgement, yet it was admitted, that the debt belonged to him, and not to the executor in whose name it was obtained, and that he might begin de novo, and recover it. Hence it was that the defendant in the judgement, was, in that state of things, entitled to his audita querela to be discharged from the execution of the administrator of the deceased executor. From these positions it is clear, that, in this case, the executor or administrator of Moncrief Hill the first administrator, could not enforce this judgement, or bring debt upon it. He, of course, could not have brought an action of debt suggesting a devastavit, against the administratrix. But our statute which gave the.action on the administration bond at once, without the necessity of the intervention of an action of devastavit, was obviously designed merely to substitute the former for the latter. It is very certain, that it did not design to give the action on the administration bond to one who was not entitled to bring debt for the devastavit. And I think it equally clear, that it designed to give this action on the bond to all, who had a right to bring debt suggesting a devastavit on the original judgement. If it were not so, then, while the administrator of the executor was proceeding on the bond according to the construction of the statute contended for, the administrator de bonis non would be proceeding in debt for the devastavit, according to the decision of Dykes v. Woodhouse. Thus, two suits for the same demand would be in a course of prosecution by different persons. This, it seems to me, is a complete reductio ad absurdum; and compels us to abandon Dykes v. Woodhouse, or to give an equitable construction to the statute. The latter is, certainly, to he preferred; since the legislature can scarcely be presumed to have intended to *406 re^use the remedy to him who had the right, and to give it to him who had it not. It is admitted, indeed, that the executor or administrator of Monerief Hill is expressly within the words of the act; “ the executor or administrator of the person who recovered the judgement;” and, on the other hand, the administrator de bonis non is not so. But as the statute obviously meant to give the remedy to the executor or administrator of the person entitled to the judgement, it is doing no great violence to its language (when we further its intention) to refuse the remedy to the person not entitled to the judgement, and to give it to him who is. Therefore, I am of opinion, that there was no error in the institution of the action' at the relation of the administrator de bonis non.
Nor do I think the objection valid, that the issue and return of the execution was anteriour to the enactment of the statute. The statute is clearly retrospective as to the judgement, as well as prospective. I see no reason for any difference, in this regard, as to the execution; and I do not perceive any absolute necessity for construing the words prospectively only. The construction of the statute concerning citizens (in Barzizas v. Hopkins, 2 Rand. 276.) shews, that the present term are, shall be interpreted may be, so as to embrace future cases. But a like freedom is not necessary here: for the words, “ and upon execution issued it shall be returned” seem to me to refer rather to the fact of the existence of such return, than to the time when it may have been made.
The last objection must also be overruled. The sheriff returned that he could find “no unadministered or unincumbered effects.” He could find neither one nor the other. How then from this negation as to both, can we infer the affirmative as to either ? If we cannot, then the return is equivalent to a general return nulla bona.
Judgement reversed.